(105 So. 593)

No. 26194.

J. H. HINES CO., Inc., v. GUILLOT, Sheriff and Tax Collector, et al.

NATIONAL LUMBER & TIE CO. v. GUILLOT, Sheriff and Tax Collector.

(July 13, 1925.)

*(Syllabus by Editorial Staff.)*

1. **Levees and flood control ⊕═25—Ad valorem tax on property within levee and drainage district held valid.**

Ad valorem tax on land within levee and drainage district *held* valid as against claims of lack of benefit and legal fraud on part of levee board, in view of judgment sustaining validity of similar taxes on same property in preceding years, attacked on same grounds.

2. **Levees and flood control ⊕═2, 23—Act creating levee district held not unconstitutional as attempt to grant drainage district powers apart from those necessarily incidental to levee system, and acreage tax levied pursuant to statute not invalid.**

Act No. 80 of 1906, creating Saline levee and drainage district, *held* not invalid under Const. 1898, art. 281, as attempt to grant to levee district powers of drainage district to construct system of drainage apart from that necessarily incidental to levee system provided for, and acreage tax levied pursuant to such act not invalid.

Appeal from Fourteenth Judicial District Court, Parish of Avoyelles; S. Allen Bordelon, Judge.

Two consolidated suits, one by the J. H. Hines Company, Inc., the other by the National Lumber & Tie Company, against Amet Guillot, Sheriff and Tax Collector, and others. From a judgment for defendants, plaintiffs appeal. Affirmed.

Milling, Godchaux, Saal & Milling, of New Orleans, and W. E. Couvillon, of Marksville, for appellants.

Porterie & Bordelon, of Marksville, for appellee tax collector.

Lester L. Bordelon, Dist. Atty., of Marksville, Wilkinson, Lewis & Wilkinson and W. B. Hamilton, all of Shreveport, for appellee levee board.

THOMPSON, J. The Saline levee and drainage district was created by Act 80 of 1906. The district includes only lands located in Avoyelles parish lying north of Red river, and which are bounded by Red river, Saline bayou, Saline lake, Horse Pen creek, and the line of hills in said parish.

The board of commissioners of said district was authorized to levy an ad valorem tax and an acreage tax to be used "in the protection of the lands and property in the district from destruction or damage by floods or rain water." Taxes were levied and collected annually to meet a bond issue of $100,000, the proceeds of which bond issue were used in the construction of a levee along Red river.

The two plaintiffs own more than two-thirds of the land located in said levee district, having acquired the same after said district was created.

The purpose of these suits is to enjoin the collection of a 5-mill ad valorem tax and a 25-cent per acre tax on the plaintiff Hines Company's lands for the year 1921 and on the lands of the National Lumber & Tie Company for 1922.

The petitions allege that the lands are bottom lands, none of which is being used for purposes of cultivation; that none of said lands has been protected by a levee or drained; that the only protection or benefit which said lands could receive would be that which would prevent them from being submerged by rain and flood waters from the Mississippi and Red rivers, which annually visit said district and remain upon petitioners' land for several months.

It is further alleged that the continued action of said board of commissioners to assess and collect an annual tax upon petition-

ers' land is a flagrant and palpable abuse and usurpation of power, and amounts to a fraud upon petitioners' rights.

It is alleged that the taxes are enormous and excessive, and amount practically to the confiscation of petitioners' property, and that the levy and collection of the same is the taking of petitioners' property without due process of law, without adequate compensation, and for the benefit of only a few.

It is further alleged that the act creating the levee and drainage district, in so far as it authorizes the imposition of the acreage tax, contravenes article 281 of the state Constitution, and is therefore void.

One of the plaintiffs enjoined the collection of the taxes on the same lands in separate suits for the years 1918 and 1919, and the two cases were before us on appeal in 1922. Hines v. Guillot, 153 La. 327, 95 So. 794.

The objections urged against the taxes then were the same as are now presented in these suits, with the exception of the attack on the constitutionality of the act creating the levee and drainage district.

We said, in the two cases referred to, which were consolidated:

"The power of taxation of the character herein complained of was unquestionably conferred upon the board, in so far as it was possible for the Legislature to give it; and the courts are not authorized to interfere, unless there has been a violation of some provisions of the state or federal Constitutions.

"Certainly we could not interfere to control the discretion of the board and its engineers, as to whether levees or canals were built, or as to their location, so long as they were acting within the powers delegated, and not in violation of the letter or spirit of constitutional provisions."

We also found in those cases, and so declared:

That "every possible precaution to prevent arbitrariness and abuse had been provided by the Legislature, and it is shown that the lands of plaintiff have been and will be benefited more as the work progresses in connection with that of other undertakings of like nature in the state." Hines v. Guillot, 153 La. 327, 95 So. 794.

[1] The case effectually disposed of the question of benefits to plaintiffs' lands and the question of legal fraud arising from the alleged arbitrary and abusive exercise of power by the levee board.

While the decision may not be res adjudicata in the present cases under the ruling in State v. Sugar Refining Co., 108 La. 603, 32 So. 965, still the attack made on the taxes of 1918 and 1919 was the same as here made against the taxes of 1921 and 1922, and the decision of the court is as applicable here as it was in the case referred to.

We see no good reason for changing our opinion or for traveling over the same ground a second time.

[2] The constitutional objection to the acreage tax is that the statute created both a levee and a drainage district, whereas, under the Constitution of 1898, which was in effect at the time the act was adopted, there was no power in the Legislature to combine and create in one district a levee and drainage district and impose taxes for the two purposes.

The counsel's argument would be sound if their premises were correct. Unquestionably the two systems—that of levees and that of drainage—are treated separately, and are governed by different provisions of the Constitution.

No one, we imagine, would contend that a district could be created both as a levee and as a drainage district with a board of commissioners functioning for both, and charged with the construction of levees and of establishing an independent, separate, and distinct system of drainage. Nor could a levee board levy and collect an acreage tax to be used for drainage purposes independent of the construction and maintenance of the levees.

We have no such case as that presented here. The act creating the Saline levee and drainage district did not create—nor was it the intention to create into one—both a levee and a drainage district. The provisions of the act all the way through demonstrate very forcibly and clearly that it was the purpose of the Legislature to create a district which was to deal with levee construction and a levee system only, and not to establish or organize in connection therewith a drainage system, except in so far as the drainage of the district might be incident to the main purpose of the act in building and constructing levees and to protect the same by proper and adequate drainage. To this extent only was the $100,000 of bonds issued, and for this purpose only was the acreage tax levied and collected. No part of the proceeds of said bonds and no part of the acreage tax has been used except in the construction of a levee and to protect the levee by proper drainage.

If the levee board should attempt to divert the funds from the purpose intended and to establish and maintain a drainage system independent of the levee construction work, it will then be time enough for the plaintiff to intervene and to prevent such diversion of the dedicated tax. Such a condition, however, cannot be anticipated, and such a fear can furnish no justification for resisting the payment of the tax.

Our interpretation of the act creating the levee and drainage district here involved finds support in Fenner v. Board of Comm'rs, 137 La. 558, 68 So. 953.

The act of the Legislature there under consideration, while creating a levee district, directly appropriated $250,000 for drainage in the levee district, and the levee commissioners could not use the funds so appropriated for levee purposes. The court held that, in thus ordering the levee district commissioners to issue bonds, "the proceeds of the sale of which were to be applied to drainage the Legislature violated article 281 of the Constitution."

In the course of the opinion, the court took occasion to say:

"In most of the acts of the Legislature establishing levee districts, to which the attention of the court has been called, there are contained provisions for drainage in connection with the building and maintaining of the levees of those districts. The Legislature appears to have given a uniform interpretation to the articles 238 and 239, authorizing the establishment of levee districts, and the right to levy taxes; and in issuing bonds, and using the proceeds thereof for the purpose of levee building and drainage jointly. * * *

"The interpretation of the Legislature on the matter has been sanctioned by the court. * * * Levee building and drainage of levee districts are joint objects; and they form parts of a system of levee building according to the uniformly accepted theory of levee building by the Legislature, the state engineers, and the levee boards of the state."

And again in Thibaut v. Board of Comm'rs, 153 La. 502, 96 So. 47, the court had under consideration the constitutionality of Act 13 of 1892, creating the Lafourche basin levee district, in which the same contention was made as is made here by the plaintiffs. The court said:

"That purpose, as appears from Act 13 of 1892, was not to construct and maintain a system of drainage, as a drainage district does, but to construct and maintain a system of levees for the purpose of protecting the lands therein from overflow, and, as a part of that purpose, implied in the express power granted to build and maintain levees, to construct such drainage as might be necessary for the building and maintenance of levees, that is to say, levee drainage, the kind of drainage sanctioned by article 16 of the Constitution, and not drainage for the reclamation and improvement of land."

Our conclusion is that Act No. 80 of 1906 is constitutional, and that it does not attempt to grant to the levee district the powers of a drainage district by authorizing it to construct a system of drainage apart

from, and not as a necessary incident of, the levee system provided for.

By adding the word "drainage" to the name of the district, it was not intended to enlarge the powers of the district so as to include within the meaning of the act the authority to create a system of drainage independent of and apart from the building and construction of levees.

For the reasons assigned, the judgments appealed from are affirmed at appellants' costs.